IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PROPERTY-OWNERS INSURANCE
COMPANY and OWNERS
INSURANCE COMPANY,

      Plaintiffs,

v.

JEKYLL OCEAN FRONT HOTEL,
LLC, PINKERTON & LAWS OF
GEORGIA, INC., COMPASS
REBAR, INC., WHEELER
SERVICES, INC., CLASSIC
CONCRETE FORMING, LLC, and
RICHARD SMOOT,

      Defendants.

Civil Action File
No.: _____

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW PROPERTY-OWNERS INSURANCE COMPANY and

OWNERS INSURANCE COMPANY, Plaintiffs in the above-styled action, and

pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, file their Complaint for

Declaratory Judgment, showing this Honorable Court as follows:

## PARTIES

1.

Property-Owners Insurance Company ("Property-Owners") is a corporation organized and existing under the laws of the state of Indiana, with its principal place of business in Michigan. Property-Owners is qualified to transact business in the state of Georgia but is not a citizen of Georgia. Property-Owners is subject to the jurisdiction and venue of this Court.

2.

Owners Insurance Company ("Owners") is a corporation organized and existing under the laws of the state of Ohio, with its principal place of business in Michigan. Owners is qualified to transact business in the state of Georgia but is not a citizen of Georgia. Owners is subject to the jurisdiction and venue of this Court.

3.

Jekyll Ocean Front Hotel, LLC ("Jekyll Ocean Front") is a limited liability company organized and existing under the laws of the state of Georgia with its principal place of business in Georgia. Jekyll Ocean Front may be served through its registered agent, Kevin Runner, at 110 Ocean Way, Jekyll Island, Georgia 31527. The sole member of Jekyll Ocean Front is Leon N. Weiner & Associates, Inc., which is a corporation organized and existing under the laws of the state of

Delaware with its principal place of business in Delaware. Jekyll Ocean Front is subject to the jurisdiction and venue of this Court.

4.

Pinkerton & Laws of Georgia, Inc. ("Pinkerton") is a corporation organized and existing under the laws of the state of Georgia, with its principal place of business in Georgia. Pinkerton may be served through its registered agent, Henry B. Hene, at 1165 Northchase Parkway, Suite 100, Marietta, Georgia 30067. Pinkerton is subject to the jurisdiction and venue of this Court.

5.

Compass Rebar, Inc. ("Compass") is a corporation organized and existing under the laws of the state of Georgia, with its principal place of business in Georgia. Compass may be served through its registered agent, Catherine Farley, at 2109 Walthour Road, Savannah, Georgia 31410. Compass is subject to the jurisdiction and venue of this Court.

6.

Wheeler Services, Inc. ("Wheeler") is a corporation organized and existing under the laws of the state of Georgia, with its principal place of business in Georgia. Wheeler may be served through its registered agent, Kenneth Wheeler, at

3539 Trotter Drive, Alpharetta, Georgia 30004. Wheeler is subject to the

jurisdiction and venue of this Court.

7.

Classic Concrete Forming, LLC ("Classic") was a limited liability company

organized and existing under the laws of the state of Georgia with its principal

place of business in Georgia. Classic was administratively dissolved on September

30, 2021 by the Georgia Secretary of State. The former members of Classic were

Mike Vandenbos and Ed Frederickson who are both citizens of, and domiciled in,

Georgia. Classic may be served via the Georgia Secretary of State pursuant to

O.C.G.A. § 14-11-209(f) and O.C.G.A. § 9-11-4. Classic is subject to the

jurisdiction and venue of this Court.

8.

Richard Smoot ("Smoot") is a citizen and domiciliary of Georgia. Smoot

may be served at 1470 Mack English Road, Ellabell, Georgia 31308. Smoot is

subject to the jurisdiction and venue of this Court.

## JURISDICTION AND VENUE

9.

This Court has original jurisdiction over this action under the provisions of 28

U.S.C. § 1332 because this action is between citizens of different states, and the

amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

10.

This Court may exercise personal jurisdiction over all of the Defendants joined in this lawsuit because they are located or otherwise present in Georgia.

11.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## NATURE OF ACTION

12.

This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Plaintiffs and Defendants.

13.

A controversy of a judicial nature presently exists among the parties that demands a declaration by this Court so that Plaintiffs may have their rights and duties under the relevant contracts of insurance determined and avoid the possible accrual of damages.

14.

Each Defendant named herein has been joined in compliance with case law requiring that insurers seeking a declaratory judgment bring into the action all individuals or entities that have a financial or other interest in the outcome of the coverage issues to be decided through the declaratory judgment.

## FACTS AND UNDERLYING LAWSUIT

15.

On March 18, 2021, Jekyll Ocean Front Hotel filed a lawsuit against Pinkerton in the Superior Court of Cobb County, State of Georgia, Civil Action Number 21102091 ("Underlying Lawsuit"). A true and accurate copy of the complaint filed in the Underlying Lawsuit is attached as **Exhibit A.**

16.

In the Underlying Lawsuit, Jekyll Ocean Front alleges that it contracted with Pinkerton to develop and construct a hotel. *See* Exhibit A, ¶ 7.

17.

The hotel's design specifications allegedly required that it be constructed with post-tensioned concrete that includes concrete, rebar, and post-tensioning tendons. *See* Exhibit A, ¶ 8.

18.

The structural design of the hotel allegedly consists of more than 2,400 post-tensioning tendons. *See* Exhibit A, ¶ 9.

19.

According to the complaint in the Underlying Lawsuit, "[for] each of the post-tensioning cables, once the concrete has been poured and begins to strengthen, the post-tensioning cables are pulled tight and anchored against the outside of the slab. The tails of the tendons then must be cut to a specified length, anchored in place, and encapsulated with a grease-filled cap to prevent corrosion and sealed in a grout pocket." *See* Exhibit A, ¶ 10.

20.

Allegedly, the post-tensioning tendons were cut longer than provided in the design specifications and were not properly seated or anchored into the concrete. Because of these failures, the lifespan of the structure was allegedly reduced, and the tendons will allegedly fail. This condition allegedly results in loss of structural capacity and costly tendon repairs and replacement. Jekyll Ocean Front claims that the tendons were systemically defective throughout the hotel. *See* Exhibit A, ¶ 11-12.

21.

The tendons allegedly began to break approximately 16 months after the hotel opened for business on approximately April 22, 2015. At the time the Underlying Lawsuit was filed, at least seven tendons had allegedly broken. *See* Exhibit A, ¶ 14.

22.

Moreover, the post-tensioning system was allegedly installed with rebar too close to edges and surfaces of the concrete at the balconies, resulting in possible corrosion and visible discoloration of the concrete surface from moisture and salt reaching the rebar. This condition will allegedly cause the rebar to expand and the concrete to spall over time.  *See* Exhibit A, ¶ 15.

23.

On May 21, 2021, Pinkerton filed an answer and a third-party complaint in the Underlying Lawsuit against Compass, Wheeler, Classic, and Smoot. A true and accurate copy of the answer and third-party complaint filed in the Underlying Lawsuit is attached as **Exhibit B.**

24.

Pinkerton alleges that it did not personally construct or install any of the allegedly defective components. Instead, all the construction-related work was

subcontracted out to the third-party defendants, including Wheeler. *See* Exhibit B, ¶ 15.

25.

Compass was allegedly responsible for all concrete re-enforcing and post-tensioning installation work. Wheeler was allegedly responsible for placing and finishing of concrete work. Classic was allegedly responsible for all concrete formwork. *See* Exhibit B, ¶ 16, 18, 19.

26.

Pinkerton alleges that it entered into a contract with Wheeler that contained an indemnity provision which requires that Wheeler indemnify Pinkerton for any claims being asserted against Pinkerton by Jekyll Ocean Front in the Underlying Lawsuit. *See* Exhibit B, ¶ 20.

**THE INSURANCE CONTRACTS**

27.

Property-Owners issued a commercial general liability policy (the "CGL Policy") to Wheeler Services, Inc., policy number 144618-48693876. A true and accurate copy of the CGL Policy is attached hereto as **Exhibit C.** Defendant Wheeler seeks a defense and indemnity under the CGL Policy for the claims asserted against it in the Underlying Lawsuit by Pinkerton.  In response, Property-

Owners issued reservation of rights letters to Wheeler and is currently defending it subject to the reservations of rights.  True and accurate copies of the reservation of rights letters are attached hereto as **Exhibit D**.

28.

Questions exist as to whether the CGL Policy issued by Property-Owners affords any coverage for the claims and damages upon which the third-party complaint filed in the Underlying Lawsuit is based and whether Property-Owners has any duty to defend or indemnify Wheeler against that third-party complaint.

29.

In pertinent part, the CGL Policy provides:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured be-
   comes legally obligated to pay as damages
   because of "bodily injury" or "property dam-
   age" to which this insurance applies.  We will
   have the right and duty to defend the insured
   against any "suit" seeking those damages.
   We may at our discretion investigate any
   claim or "occurrence" and settle any claim or
   "suit" that may result.  But:

   …

- 10 -

**b.** This insurance applies to "bodily injury" and "property damage" only if;

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

. . .

## 2. Exclusions

This insurance does not apply to:

. . .

#### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

    **(2)** That the insured would have in the absence of the contract or agreement.

. . .

#### j. Damage To Property

"Property damage" to:

. . .

    **(6)** That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(7)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

- 11 -

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

…

**SECTION II - WHO IS AN INSURED**

…

- 12 -

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

. . .

### SECTION IV · COMMERCIAL GENERAL LIABILITY CONDITIONS

. . .

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If any claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of any claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

. . .

- 13 -

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

. . .

**SECTION V - DEFINITIONS**

. . .

9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

- 14 -

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

. . .

**17.** "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

. . .

**18.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**26.** "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

. . .

**27.** "Your work":

   **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

- 15 -

30.

Owners issued a commercial umbrella policy (the "Umbrella Policy") to Wheeler Services, Inc., policy number 49-693-876-01. A true and accurate copy of the Umbrella Policy is attached hereto as **Exhibit E.** Defendant Wheeler seeks a defense and indemnity under the Umbrella Policy for the claims asserted in the Underlying Lawsuit.  In response, Owners issued a reservation of rights letter to Wheeler.  A true and accurate copy of the reservation of rights is attached hereto as **Exhibit D**.

31.

Questions exist as to whether the Umbrella Policy affords any coverage for the claims and damages upon which the third-party complaint filed in the Underlying Lawsuit is based and whether Owners has any duty to defend or indemnify Wheeler against that third-party complaint.

32.

In pertinent part, the Umbrella Policy provides:

**COMMERCIAL UMBRELLA POLICY**

**INSURING AGREEMENT**

…

H. **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

   1. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   2. **You** have failed to fulfill the terms of a contract or agreement

. . .

I. **Incident** means either an occurrence or an offense, whichever is the basis of coverage, then:

   1. When coverage applies on an occurrence basis, **incident** means an accident with respect to:

     a. **Bodily injury**, including damages claimed by any person or organization for care, loss of services or death resulting at anytime from the **bodily injury**; or

     b. **Property damage**

   including continuous or repeated exposure to substantially the same general harmful conditions. Continuous or repeated exposure to substantially the same general harmful conditions constitutes one **incident**.

. . .

J. **Insured** means the person(s) or organization(s) qualifying as such under the **PERSONS AND ORGANIZATIONS INSURED** section of this policy.

. . .

K. **Insured Contract**

   1. **Insured contract** means:

     h. That part of any other contract or agreement pertaining to **your** business (including indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the **tort liability** of another to pay damages because of **bodily injury** or **property damage** to a third person or organization.

. . .

O. **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

- 17 -

. . .

**P. Property damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the physical injury that caused the loss of use.

2. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **incident** that caused the loss of use.

. . .

**EE. Your product** means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a. **You**;

. . .

**FF. Your work** means:

1. Work or operations performed by **you** or on **your** behalf; and

2. Materials, parts or equipment furnished in connection with such work or operations.

. . .

## COVERAGE

A. **We** will pay those sums included in **ultimate net loss** that the **insured** becomes legally obligated to pay as damages because of:

1. **Bodily injury;**

2. **Property damage;**

. . .

**B.** If the basis of coverage for an **incident** is:

   **1.** An occurrence:

     **a.** The **bodily injury** and **property damage** must take place during the policy term; and

     **b.** The **incident** must take place in the **policy territory**; and

. . .

## EXCLUSIONS

. . .

**B.** Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   **1. Your product;**

   **2. Your work;** or

   **3. Impaired property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

. . .

**Q. Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **1.** Assumed in a contract or agreement that is an **insured contract**, provided such **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the **insured**, it also does not apply to such liability assumed by the **insured** under an **insured contract**; or

   **2.** That the **insured** would have in the absence of the contract or agreement.

. . .

- 19 -

**Y. Property damage** to:

    **6.** That particular part of real property on which any **insured** or any contractor or subcontractor working directly or indirectly on **your** behalf are performing operations, if **property damage** arises out of those operations; or

    **7.** That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

          . . .

**Z. Property damage** to **your product** arising out of it or any part of it.

**AA.Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

**BB.Property damage** to **impaired property** or property that has not been physically injured, arising out of:

    **1.** A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**;

    **2.** A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

          . . .

## PERSONS AND ORGANIZATIONS INSURED

          . . .

**H.** Any person, organization, trustee or estate with respect to which **you** are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of, or to facilities of or used by, **you**.

          . . .

## CONDITIONS

          . . .

**F. Legal Action Against Us**

    **We** may not be sued unless:

1. There is full compliance with all the terms of this policy; and

…

H. **Notice of Incident, Claim or Suit**

1. When an **incident** likely to involve **us** takes place, the **insured** must notify **us** in writing as soon as practicable, of any **incident**, claim or **suit**. Notice of an **incident** is not notice of a claim.

    The notice must give:

    a. **Your** name and policy number;

    b. The time, place and circumstances of the **incident**; and

    c. The names and addresses of injured persons and witnesses.

## DECLARATORY JUDGMENT

## (CGL POLICY)

## COUNT I

33.

Plaintiffs hereby reallege and incorporate paragraphs 1 through 32 of this Complaint as if set forth fully herein.

34.

In relevant part, the CGL Policy issued by Property-Owners to Wheeler only provides coverage, if at all, for "property damage" caused by an "occurrence" as those terms are defined under the CGL Policy.

35.

The Underlying Lawsuit does not allege any "property damage" other than the cost to repair the faulty and defective installation of the post-tensioning systems. *See* Exhibit A, ¶ 10.

36.

Property-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify Wheeler or anyone else for damages that do not constitute defined "property damage".

37.

Property-Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the CGL Policy for any damages sought in the Underlying Lawsuit because those damages do not constitute "property damage", and therefore Property-Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## <u>COUNT II</u>

38.

Plaintiffs hereby reallege and incorporate paragraphs 1-37 of this Complaint as if set forth full herein verbatim.

39.

The CGL Policy only applies to "property damage" that occurs "during the policy period."

40.

The CGL Policy had an effective term of January 1, 2014 to January 1, 2016.

41.

The property damage that is the subject of the Underlying Lawsuit allegedly occurred 16 months after the grand opening of the hotel in April of 2015, which was after the CGL Policy was canceled.

42.

Because the claimed property damage occurred outside of the effective policy period of the CGL Policy, Property-Owners has no duty to defend or indemnify Wheeler against the Underlying Lawsuit.

43.

Property-Owners is, therefore, entitled to a declaratory judgment that it has no duty to defend or indemnify Wheeler against any claim, liability, judgment, or settlement in the Underlying Lawsuit.

## COUNT III

44.

Plaintiffs hereby reallege and incorporate paragraphs 1-43 of this Complaint as if set forth full herein verbatim.

45.

The CGL Policy issued by Property-Owners to Wheeler excludes "property damage" to that particular part of real property on which any insured, or any contractors or subcontractors working directly or indirectly on any insured's behalf, were performing operations. (Exclusion j (6)).

46.

The damages sought against Wheeler in the Underlying Lawsuit arise out of the insured's operations in performing concrete work, and/or the operations of contractors working directly or indirectly on the insured's behalf.

47.

Property-Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the damages sought constitute "property damage" to real property on which the named insured was working, or contractors or subcontractors working directly or indirectly on any insured's behalf, and those damages are excluded from coverage.

48.

Property-Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the CGL Policy for damages because of "property damage" to real property on which the insured, or contractors or subcontractors working directly or indirectly on any insured's behalf, were performing operations, and therefore Property-Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## COUNT IV

49.

Plaintiffs hereby reallege and incorporate paragraphs 1-48 of this Complaint as if set forth full herein verbatim.

50.

The CGL Policy issued by Property-Owners to Wheeler excludes "property damage" to that particular part of the property that must be restored, repaired, or replaced because any insured's work was incorrectly performed on it. (Exclusion j (7)).

51.

The damages sought against Wheeler in the Underlying Lawsuit constitute "property damage" to property that must be restored, repaired, or replaced because the insured incorrectly performed the concrete work.

52.

Property-Owners has no duty to defend or indemnify Wheeler against the claims asserted in the Underlying Lawsuit because the damages sought constitute "property damage" to property that must be restored, repaired, or replaced because the insured incorrectly performed the concrete work.

53.

Property-Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the CGL Policy for damages to property because the insured's work was incorrectly performed on it, and therefore Property-Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## **COUNT V**

54.

Plaintiffs hereby reallege and incorporate paragraphs 1-53 of this Complaint as if set forth herein verbatim.

55.

The CGL Policy issued by Property-Owners to Wheeler excludes "property damage" to "your product" arising out of it or any part of it. (Exclusion k).

56.

The damages sought against Wheeler in the Underlying Lawsuit constitute "property damage" to "your product" arising out of the concrete work or any part of it.

57.

Property-Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the damages sought are specifically excluded as damages to "your product".

58.

Property-Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the CGL Policy for any "property damage" to "your product", and therefore Property-Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## COUNT VI

59.

Plaintiffs hereby reallege and incorporate paragraphs 1-58 of this Complaint as if set forth full herein verbatim.

60.

The CGL Policy issued by Property-Owners to Wheeler excludes "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". (Exclusion l).

61.

The damages sought against Wheeler in the Underlying Lawsuit constitute "property damage" to "your work" arising out of the concrete work or any part of it and included in the "products-completed operations hazard".

62.

Property-Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the damages sought are specifically excluded as damage to "your work".

63.

Property-Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the CGL Policy for any "property damage" to "your work" arising

from the insured's work and included in the "products-completed operations hazard", and therefore Property-Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## **COUNT VII**

64.

Plaintiffs hereby reallege and incorporate paragraphs 1-63 of this Complaint as if set forth full herein verbatim.

65.

The CGL Policy issued by Property-Owners to Wheeler excludes "property damage" to "impaired property" or property that has not been physically injured arising out of an insured's defective product or associated work or arising out of an insured's delay or failure to perform a contract in accordance with its terms. (Exclusion m).

66.

The damages sought against Wheeler in the Underlying Lawsuit constitute "property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy, or dangerous condition in the insured's concrete work, and/or arising out of the insured's delay or failure to perform a contract in accordance with its terms.

67.

Property-Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the damages sought constitute "property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy, or dangerous condition in the insured's concrete work, or arising out of the insured's delay or failure to perform a contract in accordance with its terms.

68.

Property-Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the CGL Policy for any "property damage" to "impaired property" or property that has not been physically injured arising from the insured's defective product or work or arising from the insured's delay or failure to perform a contract in accordance with its terms, and therefore Property-Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## **COUNT VIII**

69.

Plaintiffs hereby reallege and incorporate paragraphs 1-68 of this Complaint as if set forth full herein verbatim.

70.

The CGL Policy contains a contractual liability exclusion which excludes coverage for any property damage the insured is obligated to pay by reason of assumption in a contract or agreement.

71.

Wheeler assumed liability to Pinkerton in a contract or agreement, and this liability forms the basis of the third-party complaint in the Underlying Lawsuit.

72.

Property-Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the contractual liability exclusion excludes coverage for "property damage" the insured is obligated to pay by reason of assumption in a contract or agreement.

73.

Property-Owners is, therefore, entitled to a declaratory judgment that it has no duty to defend or indemnify Wheeler against any claim, liability, judgment, or settlement in the Underlying Lawsuit due to the contractual liability exclusion.

## COUNT IX

74.

Plaintiffs hereby reallege and incorporate paragraphs 1-73 of this Complaint as if set forth full herein verbatim.

75.

The CGL Policy requires that Wheeler notify Property-Owners "as soon as practicable of an 'occurrence' or an offense which may result in a claim."

76.

The Underlying Lawsuit alleges that the "property damage" occurred 16 months after the hotel opened for business in April of 2015. Pinkerton was placed on notice in August 2016, and Pinkerton notified Wheeler shortly thereafter.

77.

However, Property-Owners was not notified of the "occurrence" until June 14, 2021.

78.

Because Wheeler failed to notify Property-Owners of an occurrence which may result in a claim as soon as practicable, Wheeler breached the notice conditions precedent to coverage under the CGL Policy.

79.

Property-Owners is, therefore, entitled to a declaratory judgment that it has no duty to defend or indemnify Wheeler against any claim, liability, judgment, or settlement in the Underlying Lawsuit.

## (UMBRELLA POLICY)
## COUNT X

80.

Plaintiffs hereby reallege and incorporate paragraphs 1 through 79 of this Complaint as if set forth fully herein.

81.

In relevant part, the Umbrella Policy issued by Owners to Wheeler only provides coverage, if at all, for "property damage" caused by an "incident" as those terms are defined under the Umbrella Policy.

82.

The Underlying Lawsuit does not allege any "property damage" other than the cost to repair the faulty and defective installation of the post-tensioning systems. *See* Exhibit A, ¶ 10.

83.

Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify Wheeler or anyone else for damages that do not constitute defined "property damage".

84.

Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the Umbrella Policy for any damages sought in the Underlying Lawsuit because those damages do not constitute "property damage", and therefore Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## **COUNT XI**

85.

Plaintiffs hereby reallege and incorporate paragraphs 1-84 of this Complaint as if set forth full herein verbatim.

86.

The Umbrella Policy only applies to "property damage" arising from an "incident" which must take place "during the policy term."

87.

The Umbrella Policy had an effective term of January 1, 2014 to January 1, 2016.

88.

The "property damage" that is the subject of the Underlying Lawsuit

allegedly occurred 16 months after the grand opening of the hotel in April of 2015,

which was after the Umbrella Policy was canceled.

89.

Because the "property damage" occurred outside of the effective policy term

of the Umbrella Policy, Owners has no duty to defend or indemnify Wheeler against

the Underlying Lawsuit.

90.

Owners is, therefore, entitled to a declaratory judgment that it is not under a

duty to defend or indemnify Wheeler against any claim, liability, judgment, or

settlement in the Underlying Lawsuit.

## **COUNT XII**

91.

Plaintiffs hereby reallege and incorporate paragraphs 1-90 of this Complaint

as if set forth full herein verbatim.

92.

The Umbrella Policy excludes "property damage" to that particular part of

real property on which any insured, or any contractors or subcontractors working

directly or indirectly on any insured's behalf, were performing operations. (Exclusion Y (6)).

### 93.

The damages sought against Wheeler in the Underlying Lawsuit arise out of the insured's operations in performing concrete work, and/or the operations of any contractors working directly or indirectly on the insured's behalf.

### 94.

Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the damages sought constitute "property damage" to real property on which the named insured was working, or contractors or subcontractors working directly or indirectly on any insured's behalf, and those damages are excluded from coverage.

### 95.

Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the Umbrella Policy for damages because of "property damage" to real property on which the insured, or contractors or subcontractors working directly or indirectly on any insured's behalf, were performing operations, and therefore Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## COUNT XIII

96.

Plaintiffs hereby reallege and incorporate paragraphs 1-95 of this Complaint as if set forth full herein verbatim.

97.

The Umbrella Policy excludes "property damage" to that particular part of the property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it. (Exclusion Y (7)).

98.

The damages sought against Wheeler in the Underlying Lawsuit constitute "property damage" to property that must be restored, repaired, or replaced because the insured incorrectly performed the concrete work.

99.

Owners has no duty to defend or indemnify Wheeler against the claims asserted in the Underlying Lawsuit because the damages sought constitute "property damage" to property that must be restored, repaired, or replaced because the insured incorrectly performed the concrete work.

100.

Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the Umbrella Policy for damages claimed in the Underlying Lawsuit because the insured's work was incorrectly performed on the property, and therefore Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## **COUNT XIV**

101.

Plaintiffs hereby reallege and incorporate paragraphs 1-100 of this Complaint as if set forth herein verbatim.

102.

The Umbrella Policy excludes "property damage" to "your product" arising out of it or any part of it. (Exclusion Z).

103.

The damages sought against Wheeler in the Underlying Lawsuit constitute "property damage" to "your product" arising out of it or any part of it because the alleged "property damage" arose from Wheeler's installation of its concrete work.

104.

Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the damages sought are specifically excluded as damages to "your product".

105.

Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the Umbrella Policy for any "property damage" to "your product", and therefore Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## **COUNT XV**

106.

Plaintiffs hereby reallege and incorporate paragraphs 1-105 of this Complaint as if set forth full herein verbatim.

107.

The Umbrella Policy excludes "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". (Exclusion AA).

108.

The damages sought against Wheeler in the Underlying Lawsuit constitute "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard" because the alleged "property damage" is Wheeler's defective installation of the concrete work.

109.

Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the damages sought are specifically excluded as damage to "your work" arising out of the defective installation of the concrete work and included in the "products-completed operations hazard."

110.

Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the Umbrella Policy for any "property damage" to "your work" arising from the insured's work and included in the "products-completed operations hazard", and therefore Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

## COUNT XVI

111.

Plaintiffs hereby reallege and incorporate paragraphs 1-110 of this Complaint as if set forth full herein verbatim.

112.

The Umbrella Policy issued by Owners to Wheeler excludes "property damage" to "impaired property" or property that has not been physically injured arising out of an insured's defective product, or arising out of an insured's delay or failure to perform a contract in accordance with its terms. (Exclusion BB).

113.

The damages sought against Wheeler in the Underlying Lawsuit constitute "property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy, or dangerous condition in the insured's concrete work, and/or arising out of the insured's delay or failure to perform a contract in accordance with its terms.

114.

Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the damages sought constitute "property damage" to "impaired property" or property that has not been physically injured

arising out of a defect, deficiency, inadequacy, or dangerous condition in the insured's concrete work, or arising out of the insured's delay or failure to perform a contract in accordance with its terms.

### 115.

Owners is entitled to a judgment declaring that Wheeler is afforded no coverage under the Umbrella Policy for any "property damage" to "impaired property" or property that has not been physically injured arising from the insured's defective product or work, or arising from the insured's delay or failure to perform a contract in accordance with its terms, and therefore Owners has no duty to defend or indemnify Wheeler in the Underlying Lawsuit.

### **COUNT XVII**

### 116.

Plaintiffs hereby reallege and incorporate paragraphs 1-115 of this Complaint as if set forth full herein verbatim.

### 117.

The Umbrella Policy contains a contractual liability exclusion which excludes coverage for "property damage" the insured is obligated to pay by reason of assumption in a contract or agreement.

118.

Wheeler assumed liability to Pinkerton in a contract or agreement, and this liability forms the basis of the third-party complaint in the Underlying Lawsuit.

119.

Owners has no duty to defend or indemnify Wheeler against the claims set forth in the Underlying Lawsuit because the contractual liability exclusion excludes coverage for "property damage" the insured is obligated to pay by reason of assumption in a contract or agreement.

120.

Owners is, therefore, entitled to a declaratory judgment that it is has no duty to defend or indemnify Wheeler against any claim, liability, judgment, or settlement in the Underlying Lawsuit due to the contractual liability exclusion.

## **COUNT XVIII**

121.

Plaintiffs hereby reallege and incorporate paragraphs 1-120 of this Complaint as if set forth full herein verbatim.

122.

The Umbrella Policy requires that Wheeler notify Owners "as soon as practicable, of any 'incident', claim or 'suit.'"

123.

The Underlying Lawsuit alleges that the "property damage" occurred 16 months after the hotel opened for business in April of 2015. Pinkerton was placed on notice in August 2016, and Pinkerton notified Wheeler shortly thereafter.

124.

However, Owners was not notified of the "incident" until June 14, 2021.

125.

Because Wheeler failed to notify Owners of an "incident" as soon as practicable, Wheeler breached the notice conditions precedent to coverage under the Umbrella Policy.

126.

Owners is, therefore, entitled to a declaratory judgment that it is has no duty to defend or indemnify Wheeler against any claim, liability, judgment, or settlement in the Underlying Lawsuit.

**WHEREFORE**, Plaintiffs pray that this Court enter a judgment finding that they have no duty to defend or indemnify Defendant Wheeler against the claims asserted in the Underlying Lawsuit; that this Court bind each and every named party herein by said judgment; that Plaintiffs be awarded costs in this action; and for such further relief as this Court may deem just and appropriate.

This 9th day of May, 2022.

Respectfully submitted,

KENDALL | MANDELL, LLC


 /s/ Michael C. Kendall
Michael C. Kendall
Georgia Bar No. 414030
John C. Kendall
Georgia Bar No. 156155
*Attorneys for Plaintiffs*

3152 Golf Ridge Blvd., Suite 201
Douglasville, Georgia 30135
Telephone:   (770) 577-3559
Facsimile:    (770) 577-8113
mckendall@kendallmandell.com
jckendall@kendallmandell.com